IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH CONNEEN AND              :     CONSOLIDATED UNDER
KATHLEEN CONNEEN,               :     MDL 875
                                :
        Plaintiffs,             :
                                :
                                :
        v.                      :
                                :
                                :
AMATEK, INC.,                   :
et al.,                         :
                                :     E.D. Pa. Civil Action No.
        Defendants.             :     2:15-cv-1063-ER


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                      February 28, 2017


        This case was removed in March of 2015 from the Court

of Common Pleas of Philadelphia to the United States District

Court for the Eastern District of Pennsylvania as part of MDL-

875.

        Plaintiffs assert that Mr. Conneen developed lung

cancer as a result of, inter alia, his exposure to asbestos

released from products manufactured and/or supplied by Defendant

Goulds Pumps, Inc. ("Goulds" or "Defendant") and/or about which

Defendant owed and breached a duty of care. (See Exhibit I to

Pl. Opp., ECF No. 114 at 46-49, ¶¶7-16.)

        Plaintiffs have brought claims against various

defendants. Defendant Goulds has moved for summary judgment,

arguing that Plaintiffs' claims are barred by the applicable statute of limitations.

## I.    FACTUAL AND PROCEDURAL HISTORY

Plaintiffs allege that Joseph Conneen ("Decedent" or "Mr. Conneen") was exposed to asbestos while, inter alia, working as a pipefitter and plumber at various locations in Pennsylvania during the period from 1962 to 1980. Defendant Goulds manufactured pumps. The locations of the alleged asbestos exposure identified in Plaintiffs' Complaint are:

- Philadelphia Naval Shipyard
- Rohm and Haas Chemicals – Bristol, PA
- Rohm and Haas chemical plant – Philadelphia, PA (Bridesburg neighborhood)

(Exhibit I to Pl. Opp., ECF No. 114 at 48, ¶5.)

Defendant Goulds has moved for summary judgment, arguing that Plaintiffs' claims are barred by Pennsylvania's two-year-long statute of limitations. Although Plaintiffs appear to agree with Defendant that Pennsylvania law governs their claims against Defendant (and that a two-year-long statute of limitations is applicable), Plaintiffs contend that their Complaint was timely filed.

In connection with Plaintiffs' opposition, Mr. Conneen has provided an affidavit setting forth the events surrounding his diagnosis and his discovery of asbestos as a potential cause

of his lung cancer. (See Exhibit A to Pl. Opp., ECF No. 114 at 13-15.) According to Plaintiffs, Mr. Conneen did not learn that asbestos was potentially a cause of his illness until February 12, 2013. Plaintiffs contend that this renders the Complaint timely because the statute of limitations did not begin to run until February 12, 2013 (when he first learned that his lung cancer may have been caused by asbestos) and that, to the extent that it can be said to have begun to run when he learned of his lung cancer diagnosis (in December of 2012), tolling of the statute of limitations is warranted because he did not know at that time that asbestos may have been a cause of the illness (i.e., he had no reason or basis for bringing an asbestos action at that time).

By way of a preliminary scheduling order, discovery in this case was limited to discovery on the issue of statute of limitations. (See ECF No. 73.) While Defendants were permitted to conduct discovery – including deposition of Mr. Conneen – on this matter, it appears from the record that Mr. Conneen has not been deposed. Rather, in seeking summary judgment, Defendants rely exclusively upon medical records from a series of medical procedures and doctors' visits that occurred in December of 2012.

It is undisputed that the Complaint in this case was filed on January 20, 2015.

3

## II.   LEGAL STANDARD

### A.   Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of

showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

    B.   The Applicable Law

        The alleged asbestos exposures at issue occurred at several locations in Pennsylvania, some of which were clearly land-based exposures (i.e., at Rohm and Haas facilities in Bristol and the Bridesburg neighborhood of Philadelphia). When the parties to a case involving land-based exposure agree to application of a particular state's law, this Court has routinely applied that state's law. See, e.g., Brindowski v. Alco Valves, Inc., No. 10-64684, 2012 WL 975083, *1 n. 1 (E.D. Pa. Jan 19, 2012) (Robreno, J.).

        However, there were also alleged asbestos exposures at the Philadelphia Naval Shipyard, which may have been land-based exposures (i.e., occurring at a location within the shipyard not onboard a ship, such as a repair shop), but were more likely on-ship (i.e., sea-based) exposures. See Conner v. Alfa-Laval, Inc., 799 F. Supp. 2d 455 (E.D. Pa. 2011) (Robreno, J.) (applicability of maritime law generally); Deuber v. Asbestos Corp. Ltd., No. 10-78931, 2011 WL 6415339 (E.D. Pa. Dec. 2, 2011) (Robreno, J.) (distinguishing between land-based and ship-

based exposures within a shipyard facility). As this Court has routinely held, where a case sounds in admiralty, application of a state's law would be inappropriate. See, e.g., Mack v. General Elec. Co., 896 F. Supp. 2d 333, 336 (E.D. Pa. 2012) (Robreno, J.) (citing Gibbs ex rel. Gibbs v. Carnival Cruise Lines, 314 F.3d 125, 131–32 (3d Cir. 2002)). Therefore, if some of the claims at issue are governed by maritime law (i.e., arise from alleged sea-based asbestos exposure), they could not be barred by the Pennsylvania statute of limitations – and the Court could instead grant summary judgment on those claims only if they are barred by the maritime law statute of limitations.

For the reasons that follow below, the outcome of Defendant's motion is the same regardless of whether Pennsylvania law or maritime law is applied[1] – and regardless of

---

[1]      The Court notes that the outcome is the same whether the statute of limitations is considered a procedural matter (on which a federal MDL court applies federal law) or a substantive matter (on which, in a diversity action, a federal MDL court applies the applicable state law or, in an action premised on federal jurisdiction, applies federal law). See Various Plaintiffs v. Various Defendants ("The Oil Field Cases"), 673 F. Supp. 2d 358, 362-63 (E.D. Pa. 2009) (Robreno, J.) (application of state versus federal law); Sabella, 103 A.3d 83 (citing Reott, 618 Pa. 228, 55 A.3d at 1092) (under Pennsylvania law, the statute of limitations is an affirmative defense on which the defendant bears the burden of proof); and Clayton v. Burlington Northern and Santa Fe Ry. Co., No. 10-07082, 2012 WL 5389803 (E.D. Pa. 2012) (Robreno, J.) (citing In re Community Bank of Northern Virginia, 622 F.3d 275, 292 (3d Cir. 2010)) (under federal law (such as maritime law), the statute of limitations is an affirmative defense on which the defendant bears the burden of proof).

whether only one or both laws are applicable to all or part of
Plaintiffs' claims. (In other words, neither statute of
limitations would bar any of Plaintiffs' claims.) Therefore, the
Court need not scour the record for indications as to whether
the alleged asbestos exposures at the Naval Shipyard are
properly governed by maritime law or Pennsylvania state law.[2]

   C.   Statute of Limitations (Under Pennsylvania Law)

        Under Pennsylvania law, the statute of limitations for
an asbestos-related injury is, generally, two years from the
date on which a claim may be brought (i.e., the date on which an
injury occurs). See Abrams v. Pneumo Abex Corp., 602 Pa. 627,
981 A.2d 198 (Pa. 2009) (asbestos case); Bone v. American
Standard, No. 2468 EDA 2012, 2013 WL 5038573 (Pa. Super. 2013)

---

[2]      The Court notes that, although at the summary judgment
stage the burden is on Defendant to establish that it is
entitled to summary judgment – which, here, would require it to
establish that Pennsylvania law is applicable to the claims on
which it seeks summary judgment (in addition to establishing
that the Pennsylvania statute of limitations bars those claims),
see McCain v. CSX Transportation, Inc., 708 F. Supp. 2d 494
(E.D. Pa. 2010) (Robreno, J.), Sabella v. Appalachian
Development Corp., 103 A.3d 83 (Pa. Super. 2014) (citing Reott
v. Asia Trend, Inc., 618 Pa. 228, 55 A.3d 1088, 1092 (Pa. 2012))
(under Pennsylvania law, the statute of limitations is an
affirmative defense on which the defendant bears the burden of
proof), the motion would be denied in its entirety regardless of
whether Defendant has satisfied its burden of establishing that
Pennsylvania law is applicable. See, e.g., Kite v. Bill Vann
Co., Inc., No. 11-67753, 2014 WL 6735191 (E.D. Pa. 2014)
(Robreno, J.) (denying motion for summary judgment on grounds
that defendant asserted the statute of limitations of a state
whose law did not govern the claims at issue).

(same); 42 Pa. C.S.A. § 5524(8) (and see § 5524(2)); see also Fine v Checcio, 582 Pa. 253, 266, 870 A.2d 850, 857 (Pa. 2005) (discussing, generally, in a non-asbestos case, the running of the statute of limitations under Pennsylvania law). However, there are certain exceptions to this general rule in which the statute of limitations may be deemed "tolled." See Fine v. Checcio, 582 Pa. at 266-67, 870 A.2d at 858 (discussing the "discovery rule" and the "doctrine of fraudulent concealment" as two scenarios in which such tolling may be appropriate).

Pennsylvania recognizes the "discovery rule" in cases where an injured party is unable, despite the exercise of reasonable diligence, to know of both (1) the fact of injury, and (2) the cause of that injury. See Fine v. Checcio, 582 Pa. at 266-67, 870 A.2d at 858 ("The discovery rule originated in cases in which the injury or its cause was neither known nor reasonably knowable. . . . As the discovery rule has developed, the salient point giving rise to its application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause.")(citing Lewey v. H.C. Frick Coke Co., 166 Pa. 536, 31 A. 261 (Pa. 1895), Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788 (Pa. 1959), Hayward v. Medical Center of Beaver County, 530 Pa. 320, 608 A.2d 1040, 1043 (Pa. 1992), and Pocono International

Raceway, Inc. v. Pocono Produce, Inc., 503 Pa. 80, 468 A.2d 468
(Pa. 1983)).

The exception to the statute of limitations created by
the "discovery rule" may apply in cases of asbestos-related
disease, where there is not an immediate and obvious causal link
between a diagnosis (such as lung cancer) and exposure to
asbestos. See Cochran v. GAF Corp., 542 Pa. 210, 666 A.2d 245
(Pa. 1995) (discussing the applicability of the "discovery rule"
in a case involving potentially asbestos-related lung cancer).
"The discovery rule is a judicially created device that tolls
the running of the applicable statute of limitations until the
point where the complaining party knows or reasonably should
know that he has been injured and that his injury has been
caused by another party's conduct. The complaining party must
use reasonable diligence to discover the cause of an injury."
Gustine Uniontown Assocs., Ltd. v. Anthony Crane Rental, Inc.,
L.P., 577 Pa. 14, 30 n.8, 842 A.2d 334, 344 (2004) (citing
Crouse v. Cyclops Industries, 560 Pa. 394, 745 A.2d 606, 611
(Pa. 2000)).

Pennsylvania has codified the "discovery rule" as it
pertains to asbestos actions:

> (8) **An action to recover damages for injury to a
> person** or for the death of a person **caused by
> exposure to asbestos shall be commenced within
> two years from** the date on which the person is
> informed by a licensed physician that the person

> has been injured by such exposure or upon **the date on which the person knew or in the exercise of reasonable diligence should have known that the person had an injury which was caused by such exposure**, whichever date occurs first.

42 Pa. C.S.A. § 5524(8). (Emphasis added.)

Pennsylvania also recognizes the "doctrine of fraudulent concealment" and allows a tolling of the statute of limitations under this doctrine even in situations of unintentional deception (i.e., where a deception, albeit unintentional, results in the concealment of a plaintiff's claim such that an action is not brought within the generally applicable statute of limitations). This doctrine "is based on a theory of estoppel, and provides that the defendant may not invoke the statute of limitations if, through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." Fine v. Checcio, 582 Pa. at 270-71, 870 A.2d at 860 (citing Deemer v. Weaver, 324 Pa. 85, 187 A. 215 (Pa. 1936)).

Under either the "discovery rule" or the "doctrine of fraudulent concealment," the standard applicable in assessing a plaintiff's efforts to timely bring an action is that of "reasonable diligence." Fine v. Checcio, 582 Pa. at 271, 870 A.2d at 861. In general, this is a question of fact for the jury. In recent years, the Pennsylvania Supreme Court has provided the following guidance on this matter:

While **reasonable diligence** is an objective test, "[i]t is sufficiently flexible...to **take into account** the difference[s] between persons and their capacity to meet certain situations and **the circumstances** confronting them at the time in question." Crouse, 745 A.2d at 611 (quotation omitted). Under this test, a party's actions are evaluated to determine whether he exhibited "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interest of others." Id.

Therefore, **when a court is presented with the assertion of the discovery rules application, it must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause.** Id. **Since this question involves a factual determination** as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause, **ordinarily, a jury is to decide it.** Hayward, 608 A.2d at 1043. See Smith v. Bell Telephone Co. of Pennsylvania, 397 Pa. 134, 153 A.2d 477, 481 (1959). Where, however, reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law. Pocono International, 468 A.2d at 471.

Fine v. Checcio, 582 Pa. at 267-68, 870 A.2d at 858-59.

(Emphasis added.)

In Cochran, the Pennsylvania Supreme Court considered the "discovery rule" in the context of an asbestos case. It affirmed the lower court's grant of a motion for summary judgment on the grounds of the statute of limitations because it found that "reasonable minds could not differ as to the decedent's lack of reasonable diligence rendering this case suitable for summary judgment," given that "the decedent waited

**four years** before diligently pursuing the cause of his illness."
542 Pa. at 218-19, 666 A.2d at 250 (emphasis added). The facts
in Cochran were as follows: the decedent-plaintiff worked at a
steel mill from 1943 until 1982 (and smoked cigarettes regularly
during essentially this entire period of almost forty years); he
was diagnosed with lung cancer during a hospital stay in June of
1981 (at which time he ceased smoking); he first discussed with
his physician that asbestos exposure was a possible cause of his
cancer on March 3, 1985; he then obtained an opinion from an
expert, who opined on August 7, 1985 that his lung cancer was
caused by asbestos exposure; and he thereafter filed an asbestos
action against the defendants on September 27, 1985. In short,
the plaintiffs contended that the first time the decedent
learned that asbestos may have caused his cancer was August 1985
(or perhaps March 1985), but the Supreme Court (and the
intermediate appellate court) held that the "discovery rule" did
not save his claims because he had not exercised sufficient
diligence in identifying the cause of his lung cancer as he
learned of the lung cancer in June of 1981, did not inquire of
his doctor about the possibility of asbestos as a cause until
March of 1985, and did not file action until September of 1985.

In Fine v. Checcio, the Pennsylvania Supreme Court
considered both the "discovery rule" and the "doctrine of
fraudulent concealment" in the context of a dental malpractice

action. In that case, a plaintiff delayed in filing suit after a
dental procedure caused lasting numbness in his mouth and face.
He contended that (1) he had no reason to think there was an
injury when the numbness first began because the dentist had led
him to believe that it was a normal side effect of his procedure
– and that (2) he was thereafter continually "lulled" into non-
action for another six months because the dentist told him on
ten separate visits thereafter that the numbness would take
about six months to wear off. His complaint was filed
approximately two years and one month after the procedure was
performed and the numbness began (i.e., approximately one month
beyond the timeline provided by the statute of limitations). He
argued that, pursuant to the "discovery rule" and/or the
"doctrine of fraudulent concealment," the statute of limitations
was tolled for the six month period in which the dentist had
"lulled" him into non-action by leading him to believe that the
numbness was normal and would eventually disappear after about
six months. The Pennsylvania Supreme Court held that there were
factual issues precluding summary judgment on both the
"discovery rule" theory for tolling of the statute of
limitations and the "doctrine of fraudulent concealment" theory
for such tolling. In doing so, the Court implicitly held that,
if a jury believed that the dentist had in fact made the
"lulling" statements alleged by the plaintiff, tolling could be

warranted under the "discovery rule" and/or the "doctrine of fraudulent concealment" if it were also determined that the plaintiff had acted with "reasonable diligence under the circumstances" in pursuing his claims. With respect to the "doctrine of fraudulent concealment," the Pennsylvania Supreme Court provided the following guidance:

> In addition to the discovery rule, **the doctrine of fraudulent concealment serves to toll the running of the statute of limitations.** The doctrine is based on a theory of estoppel, and provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts. Deemer, 187 A. at 215. **The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception.** *Id*. The plaintiff has the burden of proving fraudulent concealment by clear, precise, and convincing evidence. Molineux v. Reed, 516 Pa. 398, 532 A.2d 792, 794 (1987). While it is for the court to determine whether an estoppel results from established facts, **it is for the jury to say whether the remarks that are alleged to constitute the fraud or concealment were made**. Nesbitt, 204 A.2d at 476.

582 Pa. at 270-71, 870 A.2d at 860. (Emphasis added.)

D.    Statute of Limitations (Under Maritime Law)

This Court has previously addressed the statute of limitations under maritime law. In Nelson v. A.W. Chesterton Co., the Court addressed this issue and also set forth, inter

alia, the test for determining when an asbestos cause of action

has accrued under maritime law:

> **The statute of limitations for maritime torts** is
> governed by 46 U.S.C. § 30106 (previously 46
> U.S.C. app. § 763(a)), which provides, "Except as
> otherwise provided by law, a civil action for
> damages for personal injury or death arising out
> of a maritime tort must be brought **within 3 years
> after the cause of action arose.**" A cause of
> action under general maritime law "**accrues when a
> plaintiff has had a reasonable opportunity to
> discover his injury, its cause, and the link
> between the two.**" Crisman v. Odeco, Inc., 932
> F.2d 413, 415 (5th Cir. 1991). Under the
> discovery rule, "[w]hen the specific date of
> injury cannot be determined because an injury
> results from continual exposure to a harmful
> condition over a period of time, a plaintiff's
> cause of action accrues when the injury manifests
> itself." McCain v. CSX Transp., Inc., 708
> F.Supp.2d at 498 (quoting Czyzewski v. Conrail,
> 1997 WL 9791 (E.D. Pa. 1997)). The key inquiry is
> whether the plaintiff has knowledge of the injury
> and its cause. McCain, 708 F. Supp. 2d at 498
> (citing United States v. Kubrick, 444 U.S. 111,
> 122-23, 100 S. Ct. 352, 62 L. Ed. 2d 259 (1979)
> (interpreting the Federal Tort Claims Act)).

No. 10-69365, 2011 WL 6016990, at *1 (E.D. Pa. 2011) (Robreno,

J) (emphasis added).

## III. THE PARTIES' ARGUMENTS

### A.   Defendant's Arguments

Defendant contends that Plaintiffs' claims are barred

by Pennsylvania's two-year-long statute of limitations for

asbestos injury claims. According to Defendant, this time bar is

set forth by statutory provision, which reads:

15

> An action to recover damages for injury to a person or for the death of a person caused by exposure to asbestos shall be commenced **within two years from** the date on which the person is informed by a licensed physician that the person has been injured by such exposure or upon **the date on which the person** knew or **in the exercise of reasonable diligence should have known** that the person had an injury which was caused by such exposure, whichever date occurs first.

42 Pa. C.S. 5524(8) (emphasis added). Defendant also cites to Wygant v. Gen. Elec. Co., 113 A.3d 310 (Pa. Super. 2015), which applies and construes this statutory provision, as well as various other decisions from Pennsylvania courts that address the statute of limitations: Groover v. Riddle Memorial Hospital, 357 Pa. Super. 420, 516 A.2d 53, 57 (Pa. Super. 1986), alloc. denied, 528 A.2d 957 (Pa. 1987), Pocono International Raceway, Inc. v. Pocono Produce, Inc., 503 Pa. 80, 468 A.2d 468 (Pa. 1983), Ingenito v. AC&S, Inc., 430 Pa. Super. 129, 633 A.2d 1172, 1175 (Pa. Super. 1993), and Burnside & Abbott Laboratories, 351 Pa. Super. 264, 505 A.2d 973, 976 (Pa. Super. 1985).

Defendant asserts, based on medical records, that there is evidence that, by December 2012, Mr. Conneen knew of his lung cancer diagnosis and had discussed with his physicians the fact that he had been exposed to asbestos. Specifically, Defendant points to:

(1) a December 7, 2012 "Clinical Report," which
Defendant asserts indicates a diagnosis of
"[m]ediastinal mass (R/O lung CA)," (Def. Ex.
C at 3 (ECF No. 90-3 at 4));

(2) a December 18, 2012 "CT Scan [Final] Report,"
indicating that Mr. Conneen's clinical history
was that of a "68-year-old male with lung
cancer," (Def. Ex. D at 1 (ECF No. 90-4));

(3) a report that Defendant characterizes as
"memorializing a December 18, 2012
consultation among Mr. Conneen, his family,
and Dr. John G. Devlin, indicat[ing] that Mr.
Conneen **had a 'known history of asbestos
exposure'** . . . [and] that **Mr. Conneen was
'completely negative for any tobacco use,
whatsoever'**," (Def. Ex. E at 2 (ECF No. 90-5)
(emphasis added)) (cited in Def. Mot. at 2
(ECF No. 90 at 3);

(4) a December 19, 2012 "Surgical Pathology
Report," which indicates a "final diagnosis"
of "lung, right upper lobe, transbronchial
biopsy: poorly differentiated non-small cell
carcinoma, favor adenocarcinoma," (Def. Ex. F
at 1 (ECF No. 90-6)); and

(5) a December 20, 2012 "PET/CT Scan Report" (a)
indicating that Mr. Conneen was a "68-year-old
male with recently diagnosed lung carcinoma"
who was in the process of "[i]nitial staging"
of the cancer," (b) making reference to a
"prior diagnostic CT of the chest dated
12/07/2012," (c) including an "impression" of
a "known malignancy in the medial right upper
lobe/suprahilar region which encases the right
upper lobe bronchus" and (d) noting other
findings "suspicious for an additional
malignant lesion," (Def. Ex. G (ECF No. 90-
7)).

Def. Mot. at 2 (ECF No. 90 at 3). Defendant asserts that the

"discovery rule" does not save Mr. Conneen's claims because he

was not diligent in attempting to discover the cause of his lung

cancer. In support of this position, Defendant argues that the fact that Mr. Conneen had never smoked in his life "should have heightened his inquiry as to the cause of the lung cancer." (Def. Reply at 3, ECF No. 115 at 3.)

B.   <u>Plaintiffs' Arguments</u>

As a preliminary matter, Plaintiffs contend that Defendant has not met its initial burden of shifting to Plaintiffs the burden of establishing that their action was timely filed: "**Defendants have provided no evidence**, subjective or objective, that Mr. Conneen should, or could, have been on notice that his lung cancer was related to asbestos exposure before February 12, 2013." (Pl. Opp. at 2, ECF No. 114 at 2 (emphasis added).)

Plaintiffs also assert that summary judgment is not warranted because Mr. Conneen did not learn that asbestos may have been a cause of his lung cancer until February 12, 2013. (Pl. Opp. at 6, ECF No. 114 at 6.) As such, according to Plaintiffs, their lawsuit was filed within two (2) years of learning that there was a basis for an asbestos-related claim.

Although Plaintiffs concede that Mr. Conneen was diagnosed with lung cancer in December of 2012, they contend that his claims are nonetheless timely (pursuant to the "discovery rule" applicable in cases of a "creeping disease"

such as his asbestos-related illness) because he was reasonably
diligent in inquiring about the cause of his lung cancer – and
determining within approximately two months thereafter – that
asbestos may have been a cause of this cancer. (Pl. Opp. at 2,
ECF No. 114 at 2.) Plaintiffs point out that none of his doctors
advised him that asbestos may have caused his illness and that
it was only upon his own inquiry and investigation that this
possibility became known to him. (Pl. Opp. at 6, ECF No. 114 at
6.) Moreover, Plaintiffs note that a December 24, 2012 medical
chart note from one of his physicians (Dr. Assarsson) explicitly
states "no worrisome exposures," despite the fact that Mr.
Conneen had answered a series of questions pertaining to his
line of work and any workplace exposures to chemicals,
substances, or asbestos. (Pl. Opp. at 2 and 4-5, ECF No. 114 at
2 and 4-5.)

As legal authority for their position, Plaintiffs rely
upon: Cochran v. GAF Corp., 542 Pa. 210, 666 A.2d 245 (1995),
Cappelli v. York Operating Co., 711 A.2d 481, 486 (Pa. Super.
Ct. 1998), Cathcart v. Keene Industrial Insulation, 324 Pa.
Super. 123, 135-36, 471 A.2d 493, 500 (1984), Anthony v. Koppers
Co., Inc., 284 Pa. Super. 81, 91, 425 A.2d 428, 434 (1980), rev.
other grnds, 496 Pa. 119, 436 A.2d 181 (1981), and Pearce v.
Salvation Army, 449 Pa. Super. 654, 658, 674 A.2d 1123, 1125
(1996).

In support of their assertions, Plaintiffs cite to the following evidence (some of which overlaps with the evidence relied upon by Defendant):

- Affidavit of Mr. Conneen
  Mr. Conneen states in his affidavit that:

    (3)  In December 2012, doctors found a mass on my lung by x-ray and CT scan.

    (4)  I underwent a biopsy on December 17, 2015 at Bryn Mawr Hospital.

    (5)  On December 18, 2012, Dr. John Devlin asked me a lot of questions during a consultation; including what I did for a living, whether I smoked, and if I had various exposures, like second hand smoke, asbestos, chemicals, and other things. While I was told I had lung cancer during the consultation, I was not told what caused, or may have caused it, to develop. At that time, the most immediate concern for my physicians, for me and for my family was to treat the cancer and remove it from my body so that I might live.

    (6)  On December 24, 2012, I had a consultation with Erik Assarsson, MD at Bryn Mawr Hospital who had copies of my records. Again we discussed the history I gave and according to **Dr. Assarsson, he noted I did not have any "worrisome exposures."**

    (7)  Because the doctors at Bryn Mawr Hospital were uncomfortable performing the surgery I needed, we focused on locating another surgeon to remove the tumor.

    (8)  On January 18, 201[3], I had lung surgery at the University of Pennsylvania Hospital.

    (9)  I am aware the records show I was in the hospital for my lung cancer surgery from January 18, 201[3] until I was discharged on January 26, 2013.

    (10) After recuperating from my surgery, and on February 12, 2013, my family and I had a

surgical follow-up consultation with John C. Kucharczuk, MD at the University of Pennsylvania Hospital who reviewed the pathology findings with us.

   (11) **It was at this February 12, 2013, meeting that we asked Dr. Kucharczuk what might have caused my cancer and he indicated that asbestos may have been a cause. This was the first indication I had that asbestos may have been a cause of my cancer.**

   (12) I am also aware that **at least one record states that I smoked** many years ago. I never smoked cigarettes and **that record is in error**.

(Pl. Ex. A, ECF No. 114 at 13-15. (Emphasis added.))

- <u>Bronchoscopy Report (Dated December 17, 2012)</u>
  Plaintiffs include a bronchoscopy report from Main Line Hospitals (Bryn Mawr Hospital) dated December 17, 2012, which indicates that a bronchoscopy was performed on Mr. Conneen on December 17, 2012. The report includes Dr. Piatt's typewritten name at the bottom (though there is no signature on the report and the line for identification of the report's dictator is left blank). The report contains no mention of cancer, asbestos, or asbestos exposure.

  (Pl. Ex. B, ECF No. 114 at 16-17.)

- <u>Cytopathology Report (Dated December 18, 2012)</u>
  Plaintiffs include a cytopathology report from Main Line Health Laboratories (Lankenau Medical Center) dated December 18, 2012, which indicates that a bronchial brushing and a bronchial washing were each "positive" and that notes for each: "Cells compatible with poorly differentiated carcinoma, non-small cell type (See biospsy . . . for further work-up)." The report identifies Dr. Clarke Piatt, M.D. as the physician, and indicates that it was prepared (and finalized) on December 18, 2012 by Gary S. Daum, M.D. It contains no diagnosis of cancer nor any mention of asbestos or asbestos exposure.

  (Pl. Ex. C, ECF No. 114 at 18-19.)

- <u>Surgical Pathology Report (Dated December 19, 2012)</u>
  Plaintiffs include a cytopathology report from Main
  Line Health Laboratories (Bryn Mawr Hospital), which
  is dated December 19, 2012 and indicates a "final
  diagnosis" of: "lung, right upper lobe,
  transbronchial biopsy: poorly differentiated non-
  small cell carcinoma, favor adenocarcinoma. See
  comment." The report identifies Dr. Clarke Piatt,
  M.D. as the physician, indicates that it was
  prepared on December 17, 2012 by Dominic Boccella,
  PA (ASCP), that the "findings were discussed with
  Dr. Piatt on December 18, 2012," and that it was
  thereafter "electronically signed out" by Vincenzo
  Ciocca, D.O. on December 19, 2012. The report
  contains no mention of asbestos or asbestos
  exposure.

  (Pl. Ex. D, ECF No. 114 at 20-21.)

- <u>Letter from Dr. Assarsson (Dated December 24, 2012)</u>
  Plaintiffs include a December 24, 2012 letter from
  Dr. Assarsson to Dr. Piatt (with "cc" to Dr.
  Hamsher, Dr. Walker, and the Tumor Registry), which
  states, <u>inter</u> <u>alia</u>: "Pathology described a poorly
  differentiated non-small cell bronchogenic carcinoma
  favoring adenocarcinoma. . . . Mr. Conneen . . .
  leads a very active lifestyle and typically record
  27 miles per week on his treadmill. **There is no
  history of** tobacco use or **worrisome exposures**. . . .
  I have had a thorough discussion with Mr. Conneen
  and his family regarding the implications of these
  findings." (Emphasis added.) The record records
  "Impression:" as "Non-small cell bronchogenic
  carcinoma favoring adenocarcinoma, presenting with
  right upper lobe collapse, stage uncertain." The
  letter contains no mention of asbestos or asbestos
  exposure.

  (Pl. Ex. E, ECF No. 114 at 22-24.)

- <u>Hospital Discharge Summary</u>
  A January 26, 2013 "Hospital Discharge Summary" from
  Penn Medicine indicates that Mr. Conneen was
  admitted to the Hospital of the University of
  Pennsylvania on January 18, 2013 after surgeries
  (including a "[r]ight pneumonectomy,
  [t]racheoplasty, [p]atrial SVC [r]esection, [and

[m]ediastinoscopy") were performed there that day,
and that he was thereafter released from the
hospital on January 26, 2013. The summary identifies
Dr. John Kucharczuk as the attending physician at
the time of discharge and the physician for post-
discharge follow-up. It indicates that it has been
signed (in typewritten signature) by Benjamin
Taylor, M.D. on January 26, 2013, and that it was
thereafter electronically signed by John Kucharczuk,
M.D. on February 6, 2013. The summary contains no
mention of asbestos or asbestos exposure.

(Pl. Ex. F, ECF No. 114 at 25-30.)

- Surgical Pathology Report (Dated January 29, 2013)
  A "Surgical Pathology Report" by the Department of
  Pathology and Lab Medicine (Division of Anatomic
  Pathology) of the Hospital of the University of
  Pennsylvania (University of Pennsylvania Health
  System) contains information pertaining to a
  specimen (from Mr. Conneen's lung lobe) obtaining
  during a pneumonectomy. The report discusses a tumor
  in his lung and states, "[l]esion on radiograph
  transbronchial biopsy showed non-small cell lung
  cancer favoring adenocarcinoma." (Page 1.) The
  "final diagnosis" indicates, in part: "Invasive
  poorly differentiated adenocarcinoma . . . involving
  right upper and lower lobes." (Page 2.) The report
  indicates that the collection date was January 18,
  2013, the receipt date was January 18, 2013, and the
  date of verification was January 29, 2013. Two
  pathologists are identified: Charabas G. Deshpande,
  M.D. and MacLean P. Nasrallah, M.D., Ph.D. Dr.
  Deshpande is identified as the report's verifier.
  (Page 3.) The report indicates four "Frozen Section
  Diagnos[e]s": three (3) of these are indicated to
  have been "called to Dr. Kucharczuk at 11:35 AM [no
  date specified] by CRG, Michelle R. Pramick, MD,
  Christine Carleton, PA(ASCP), Paul J Zhang, MD"; one
  (1) of these is indicated to have been "called to
  Dr. Kucharczuk at 1:46 PM [no date specified] via
  Michelle R. Pramick, MD, CRG, Christine Carleton,
  PA(ASCP), Paul J Zhang, MD." (Page 4.) The report
  contains no mention of asbestos or asbestos
  exposure.

  (Pl. Ex. G, ECF No. 114 at 31-37.)

- <u>Letter from Division of Thoracic Surgery (HUP)</u>
  <u>(Dated February 12, 2013)</u>
  A letter dated February 12, 2013 from Dr. John
  Kucharczuk, M.D., Associate Professor of Surgery
  with Penn Medicine (Hospital of the University of
  Pennsylvania) to Dr. Clark Piatt, M.D., indicates
  that Mr. Conneen was seen by Dr. Kucharczuk that day
  and was admitted to the hospital for further
  testing, as he was not feeling well. The letter does
  not contain a handwritten signature, but appears to
  contain an electronic signature by (or on behalf of)
  Dr. Kucharczuk. The letter contains no mention of
  asbestos or asbestos exposure.

  (Pl. Ex. H, ECF No. 114 at 38-39.)

## IV.  DISCUSSION AND ANALYSIS

Defendant asserts that the statute of limitations on
Plaintiffs' claims expired on December 18, 2014 (i.e., two years
after the medical records from Mr. Connen's lung cancer
treatment contain a mention of asbestos exposure), and that the
"discovery rule" does not save Plaintiffs' claims (filed on
January 20, 2015) because Mr. Conneen was not reasonably
diligent in attempting to identify the cause of his lung cancer
in order to pursue the claims. Plaintiffs assert that Mr.
Conneen did not learn that his lung cancer may have been caused
by asbestos until February 12, 2013, upon his own inquiry to Dr.
Kucharczuk, such that his Complaint was clearly filed within two
years of his learning of this information. Plaintiffs contend
that Mr. Conneen was reasonably diligent in investigating the
cause of his illness and pursuing his claims.

The Court now explains why summary judgment in favor of Defendant is not warranted under either the maritime law statute of limitations or the Pennsylvania law statute of limitations:

### A.   Maritime Law

To the extent that maritime law is applicable to Plaintiffs' claim(s) against Defendant, summary judgment is not warranted even by Defendant's own theory that Mr. Conneen learned of his potential claims by December 2012. This is because the applicable statute of limitations under maritime law is three years from the time the cause of action arose – which, under maritime law occurs "when a plaintiff has had a reasonable opportunity to discover his injury, its cause, and the link between the two." Crisman v. Odeco, Inc., 932 F.2d 413, 415 (5th Cir. 1991) (cited by Nelson, 2011 WL 6016990, at *1). Therefore, even if, as Defendant asserts, Mr. Conneen's statute of limitations began to run in December of 2012 (when he was first diagnosed with lung cancer and when his medical records first mention a history of asbestos exposure), his Complaint – which was filed in January of 2015 (i.e., within three years of December 2012) – is clearly timely under maritime law. As such, to the extent that maritime law is applicable to Plaintiffs' claim(s) against Defendant, summary judgment in favor of Defendant is not warranted. Id.

Having determined that the maritime law statute of limitations does not bar any of Plaintiffs' claims, the Court next considers what effect (if any) the Pennsylvania statute of limitations has on Plaintiffs' claims.

### B.  Pennsylvania Law

It is undisputed that Mr. Conneen was first diagnosed with lung cancer in December of 2012. It is undisputed that Mr. Conneen's Complaint was filed on January 20, 2015. It is also undisputed that the Pennsylvania statute of limitations applicable to an asbestos-related injury is, in general, two years – and that Pennsylvania allows for tolling of the statute of limitations in some circumstances, including those in which a plaintiff was reasonably diligent in attempting to identify the cause of an injury but was unable to do so for some period of time due to no fault of his own (i.e., exceptions to the statute of limitations exists, such as one pursuant to the "discovery rule").

What is disputed, then, are the following two matters: (1) the date on which Mr. Conneen first discovered that asbestos exposure was potentially a cause of his lung cancer, and (2) whether he acted with reasonable diligence in attempting to identify the cause of his lung cancer. The Court will address each of these in turn:

1.   Date of Discovery of Asbestos as a Possible
     Cause

Defendant asserts that Mr. Conneen knew (or should
have known) that asbestos was a potential cause of his lung
cancer (such that he could bring an asbestos-related claim) by
December 18, 2012. This assertion is based upon (1) the December
18, 2012 "CT Scan [Final] Report," indicating that Mr. Conneen
had a diagnosis of lung cancer, (Pl. Ex. D at 1 (ECF No. 90-4)),
and (2) the December 18, 2012 report that Defendant
characterizes as "memorializing a December 18, 2012 consultation
among Mr. Conneen, his family, and Dr. John G. Devlin,
indicat[ing] that Mr. Conneen had a 'known history of asbestos
exposure' . . . [and] that Mr. Conneen was 'completely negative
for any tobacco use, whatsoever'." (Pl. Ex. E at 2 (ECF No. 90-
5)). (Def. Mot. at 2 (ECF No. 90 at 3).)

Mr. Conneen concedes that he was questioned about
occupational asbestos exposure (among numerous other things,
such as chemicals, toxins, and smoking) in December of 2012 –
but asserts that none of his many doctors every informed him
that asbestos may have caused his cancer, and that he did not
learn that asbestos was even potentially a cause of his lung
cancer until February 12, 2013, when he met with Dr. Kucharczuk
and took it upon himself to question Dr. Kucharczuk about what
may have caused his cancer. Mr. Conneen also asserts that his

medical records contained errors: (1) explicitly stated (after
he divulged his history of asbestos exposure in response to a
patient questionnaire) that he had experienced "no worrisome
exposures," and (2) incorrectly noted in some places that he was
a smoker when he has never smoked at all during his lifetime.

　　　　The Court has reviewed the medical records (and other
evidence) submitted by the parties on both sides of the case.
The key document upon which Defendant's argument rests is the
December 18, 2012 medical record mentioning a history of
asbestos exposure – which is also the sole document (in the
medical records submitted by either party) that mentions
asbestos. The document is a typewritten, three-page-long
"Consultation" note on Main Line Hospitals (Bryn Mawr Hospital)
letterhead, which appears to be a file note created by a
physician for record-keeping purposes. The document states,
inter alia, "Completely negative for any tobacco use, whatsoever
. . . . Notably, [Mr. Conneen} does have known history of
asbestos exposure, and possibly other industrial chemical
exposure on the job." (Def. Ex. E at 2 (ECF No. 90-5).) It is
not clear who created the document, as it does not contain a
handwritten signature and the space for identifying the dictator
of the note remains blank. The document contains a typewritten
"John G. Devlin, M.D." toward the end and some electronic
identifiers consisting solely of numbers (perhaps indicating

that it was Dr. Devlin who created the note – or perhaps that someone else created the note and put Dr. Devlin's name on it – perhaps at his direction (or perhaps not at his direction)).

More importantly, however, there is nothing in the document that indicates that it was ever provided or shown to Mr. Conneen (or his family), or indicates the date of any alleged provision or showing. There is nothing in the document that indicates any discussion was held with Mr. Conneen about a potential link between asbestos exposure and his cancer at that December 18, 2012 consultation (or any time thereafter). Rather, the document indicates that it was sent to four (4) other physicians (Drs. Assarsson, Piatt, Hamsher, and Walker) – one of whom wrote a letter thereafter (on December 24, 2012) explicitly stating that Mr. Conneen had experienced "no worrisome exposure." As such, the existence of the document does not even suggest – much less establish – that Mr. Conneen was advised as to any potential link between his cancer and asbestos exposure (or that any such causal relationship was even alluded to).

Perhaps of significance, however, in determining when Mr. Conneen learned of the potential causal link between asbestos exposure and his cancer (and also for purposes of (1) the Court's consideration below of (a) "reasonable diligence" on the part of Mr. Conneen and/or (b) the potential availability of the "fraudulent concealment" theory of tolling, as well as (2)

the identification of material factual disputes as to what was
known and communicated by whom (and when) regarding Mr.
Conneen's cancer and its cause), what perhaps <u>can</u> reasonably be
inferred from the document is that five (5) separate physicians
involved in Mr. Conneen's care at Main Line Hospital/Bryn Mawr
Hospital (Drs. Devlin, Assarsson, Piatt, Hamsher, and Walker)
were aware (or had information in their records indicating) that
Mr. Conneen had experienced occupational asbestos exposure but,
according to Mr. Conneen, never once informed him that asbestos
may have caused his cancer. (The Court notes that this is an
assertion that it cannot conclude is implausible, given the lack
of any documentation in the medical records that anyone ever
discussed with Mr. Conneen (or his subsequent physician (Dr.
Kucharczuk) at the University of Pennsylvania Health
System/Hospital of the University of Pennsylvania, to whom these
physicians appear to have referred Mr. Conneen) a potential link
between the asbestos exposure they were aware of and the lung
cancer for which they were treating him.)

          Perhaps also of some significance for these
considerations, while the December 18, 2012 document exchanged
among the five physicians clearly states that (1) Mr. Conneen is
a lifelong <u>non</u>-smoker who (2) had a "notable" history of
asbestos exposure" – a subsequent letter from one of these
physicians (on December 24, 2012) explicitly denies any

"worrisome exposures." Similarly, there is potentially some significance in the fact that, according to Mr. Conneen, there were other records created in his chart which stated incorrectly and/or erroneously that he had a history of smoking when in fact, as the December 18, 2012 record indicates and Mr. Conneen confirms, he is a lifelong non-smoker. In short, the December 18, 2012 note (which appears to be an internal hospital record) seems to (1) corroborate Mr. Conneen's version of events (i.e., underscores the existence of genuine disputes of material fact regarding what happened when), and (2) make it surprising that there is no documentation in his medical records that any of his at least five (5) physicians discussed with him the possible cause of his lung cancer (which, based on this information documented in his chart, could not have been smoking but could, "notably," have been asbestos exposure) (i.e., raises fact questions as to the applicability of the "tolling" exception(s) to the statute of limitations).

To summarize, the evidence presented by Defendant does not establish that Mr. Conneen learned of asbestos as a potential cause of his cancer in December of 2012. Moreover, because Mr. Conneen asserts that he first learned of this possible link in February 2013 (less than two years before he filed his Complaint), there is a genuine dispute of material fact as to when Mr. Conneen learned of this possible causal

link. Therefore, if the statute of limitations began to run when Mr. Conneen first knew of a possible causal link between asbestos exposure and his cancer, summary judgment is not warranted because this is a fact question for the jury. <u>See</u> <u>Anderson</u>, 477 U.S. at 248-50.

Although Defendant's evidence has not established when (or even whether) Mr. Conneen became aware of the possible causal link between asbestos exposure and his cancer, for purposes of deciding Defendant's motion for summary judgment (i.e., to the extent that Defendant contends that the statute began to run in December of 2012 regardless of when Mr. Conneen first learned of the potential causal link), the Court next considers whether summary judgment may be warranted on grounds that Mr. Conneen failed to act with reasonable diligence in attempting to ascertain the cause of his cancer after its diagnosis in December of 2012. <u>See</u> <u>Fine v. Checcio</u>, 582 Pa. at 267-68, 870 A.2d at 858-59 ("Where, however, reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, . . . the **discovery rule** does not apply **as a matter of law**. . . . In addition to the discovery rule, the **doctrine of fraudulent concealment** serves to toll the running of the statute of limitations. The doctrine is based on a theory of estoppel .

. . [and] it **is for the court to determine** whether an estoppel results" (emphasis added).)

### 2.   Use of Reasonable Diligence in Identifying Cause of Illness

It is undisputed that (1) Mr. Conneen learned of his lung cancer diagnosis in December of 2012, (2) he discussed asbestos exposure as a possible cause of his illness with Dr. Kucharczuk on February 12, 2013, and (3) he filed his Complaint on January 20, 2015. Therefore, it is clear that his Complaint was filed within two years of his discussion with Dr. Kucharczuk. The issue for the Court to consider, then, is whether Mr. Conneen acted with reasonable diligence under the circumstances in seeking to identify the cause of his cancer during the period from December 18, 2012 (when he was diagnosed) until February 12, 2012 (when the evidence indicates he discovered from Dr. Kucharczuk that asbestos may have been the cause). See Gustine Uniontown Assocs, 577 Pa. at 30 n.8, 842 A.2d at 344 (citing Crouse, 560 Pa. 394, 745 A.2d at 611). Pursuant to the guidance in Fine v. Checcio, the Court considers this issue in the context of each of the two related theories of "tolling" of the statute of limitations:

### a.   The "Discovery Rule"

Unlike the situation in Cochran, this Court cannot say in the case at hand that Mr. Conneen did not act with reasonable

diligence under the circumstances. In Cochran, the plaintiff did not question his physician about the possible cause of his lung cancer until over three years and ten months after his diagnosis, which led the court to reject a tolling of the statute of limitation under the "discovery rule" exception to the statute of limitations and grant summary judgment in favor of the defendant because it found that, as a matter of law, the plaintiff had not acted with reasonable diligence (i.e., reasonable minds could not differ as to whether he had acted with reasonable diligence). In stark contrast, in the case at hand, the time that it took Mr. Conneen to discover that asbestos was potentially a cause of his illness was less than two months, part of which time he was undergoing surgery, hospitalized, and recovering from surgery. A reasonable jury could conclude from these facts that Mr. Conneen was reasonably diligent under the circumstances. See Anderson, 477 U.S. at 248-50. In short, the Court must conclude that, with respect to the "discovery rule" theory of tolling of the statute of limitations, there is, at the very least, as genuine dispute of material fact as to whether Mr. Conneen exercised reasonable diligence in identifying his claim, such that the statute of limitations should be tolled during that period of approximately two months (i.e., such that his Complaint would be timely pursuant to the "discovery rule"). See id. As such, summary

judgment in favor of Defendant on grounds of the Pennsylvania statute of limitations is not warranted. See id.

      b.   The "Doctrine of Fraudulent Concealment"

Because the facts and assertions set forth in Plaintiffs' opposition seem to suggest (without directly asserting) the possibility that the "doctrine of fraudulent concealment" (which can apply even in situations of unintentional deception or concealment of evidence) may also be applicable (and to address the second theory of tolling for a jury to potentially consider in the event that a jury should determine that the facts and circumstances pertinent to the "discovery rule" alone do not warrant tolling), the Court addresses this second theory of tolling briefly.

The same standard of "reasonable diligence under the circumstances" is applicable under the "fraudulent concealment" theory of tolling as under the "discovery rule" theory. See Fine v. Checcio, 582 Pa. at 271, 870 A.2d at 861. Therefore, the Court would have to conclude, as just set forth above, that there is at least a fact question for the jury as to whether Mr. Conneen acted with reasonable diligence in pursuing his claim. However, the Court notes that, under the current evidentiary record submitted in connection with Defendant's motion for summary judgment and Plaintiffs' opposition thereto, there is no

direct evidence to establish – and insufficient allegations to create a fact question on – the issue of whether there was any conduct that would constitute "fraudulent concealment" or "unintentional deception" warranting application of this doctrine). It is true that there is evidence from the medical records and Mr. Conneen's affidavit that: (1) at least five physicians (and perhaps other medical professionals) were advised that Mr. Conneen was a life-long non-smoker who had experienced "notable" asbestos exposure, (2) none of these physicians or medical professionals advised Mr. Conneen that his lung cancer may have been linked to the asbestos exposure (of which they were aware), (3) at least one of these physicians subsequently created a record stating not only that there were no "worrisome exposures" but also that he had a "had a thorough discussion with Mr. Conneen and his family regarding the implications" of this, and (4) someone included erroneous information in his file indicating that he had a history of smoking (which would seem to create evidence in his medical records suggesting – and, thus a basis for misleading other physicians subsequently reviewing the records to assume or conclude – that Mr. Conneen's cancer may have been caused by smoking). However, this alone does not permit a reasonable jury to conclude that the statute of limitations was tolled due to fraudulent or unintentional deception or concealment of the

causation information pertinent to an asbestos cause of action. This is because, under the rationale of Fine v. Checcio, the rule only applies where the conduct of the defendant has been fraudulent or otherwise deceptive – and there is no evidence in the record (or allegations warranting consideration of circumstantial evidence) that, in the occurrence of this unusual chain of events, any of the physicians (or other medical professionals) were either acting on behalf of Defendant to protect it from liability or were otherwise acting as agents for Defendant in unintentionally deceiving or "lulling" Mr. Conneen by concealing his potential claim. See Fine v. Checcio, 582 Pa. at 270-71, 870 A.2d at 860 (citing Deemer, 324 Pa. 85, 187 A. 215 (Pa. 1936)). For this reason, the Court cannot conclude at this stage of the litigation that the "doctrine of fraudulent concealment" is applicable. See Fine v. Checcio, 582 Pa. at 270-71, 870 A.2d at 860.

## V.    CONCLUSION

Defendant's motion for summary judgment on grounds of the Pennsylvania statute of limitations is denied. The Court's sua sponte consideration of the availability of summary judgment on grounds of the maritime law statute of limitations (pursuant to Federal Rule of Civil Procedure 56(e)(3)) also requires that the motion be denied.